Zvi BELSKY, father and next of kin of Sholom Belsky, Deceased, Basya Belsky and Zvi Belsky, Individually, Appellants,

v.

Guy H. PAYNE and Claude Payne, Jr., Appellees.

Court of Appeals of Tennessee, Western Section.

Aug. 10, 1977.

Certiorari Denied by Supreme Court Oct. 24, 1977.

Al H. Thomas, Memphis, for appellants.

Braxton C. Gandy, Memphis, for appellees.

W. E. QUICK, Special Judge.

This is an appeal from judgment of the trial court sustaining motion for summary judgment and dismissing complaint on the ground the action was not commenced within the one-year statutory period of limitations, and therefore barred.

Appellants' one assignment of error is directed to the action of the trial court in granting the motion for summary judgment, it being the position of appellants that the trial court erred in not finding that there are material fact issues in dispute.

In considering the assignment, it is believed helpful to review in some detail the facts of the case, and particularly the evidence in support of the motion. We will refer to the parties according to their status in the trial court, as plaintiffs and defendants.

On the early morning of March 28, 1975 plaintiffs were walking in a northerly direction on White Station Road, in Memphis, Shelby County, Tennessee, when they were struck by a northbound automobile. The collision resulted in the death of plaintiffs' decedent, Sholom Belsky, a child two years of age, and injury to the mother, Mrs. Basya Belsky. The driver of the automobile did not stop, and his identity was unknown at time of accident.

Shortly following the accident, investigating officers found at the scene a broken side view mirror encased in a maroon colored frame, and some hours later were able to match the mirror with a maroon colored automobile found parked in carport of residence of defendant, Claude Payne, Jr. at 5175 Mary Starnes Drive, located in the same general neighborhood where the accident occurred. Examination of the automobile disclosed other evidences of recent damage, and blood and human matter were found on the side of the car.

Inquiry at the residence developed that the car in question had been driven the night before by Guy H. Payne, son of defendant, Claude Payne, Jr. Guy H. Payne was thereupon arrested and transferred to police headquarters.

On April 7, 1975 preliminary hearing was had in the City Court of Memphis, at which time defendant was represented by counsel, and entered a plea of not guilty. He was nevertheless bound to the Grand Jury on charges of murder in the second degree, leaving the scene, and driving while intoxicated.

On April 25, 1975 indictments were returned against Guy H. Payne on all three charges, and on November 24, 1975 he plead guilty to the charges.

Joint action for damages was filed by plaintiffs on April 30, 1976, and on May 16, 1976 defendants filed motion for summary judgment seeking dismissal of the action on the ground the complaint was not filed within one year of date of accident and injury. The motion for summary judgment was sustained and the action dismissed, from which action of the trial court plaintiffs have appealed.

In support of the motion, defendants have filed transcript of the proceedings before the City Court, certified copy of the police report, certified copies of the indictments, and a number of affidavits. The transcript of testimony introduced in the City Court, having to do with the identity of the driver of the automobile involved, consists for the most part of the testimony of Sergeant T. E. Clark, investigating officer at the scene, which is in the nature of a report. He was not one of the arresting officers, and except for his findings at scene of accident, his testimony, for the most part appears to be hearsay.

In affidavit of Ronald D. Krelstein, who was of counsel for Payne in the City Court hearing, he states: "The police officers testified that the defendant told them on the date of his arrest that he was driving at the time of the accident, and the defendant also told me (Krelstein) he made such an admission to the police."

The transcript of testimony filed in support of the motion for summary judgment contains no testimony on the part of a police officer, or other witness, as to an admission made by defendant, Payne, on

the date of his arrest that he was driving the car involved in the accident. According to the transcript, the only officer testifying in the City Court hearing was Sergeant T. E. Clark, who admittedly at no time interviewed Payne. The arresting officers did not testify.

In affidavit of Hal Gerber, also of counsel for defendant Payne in the City Court, states: "Guy H. Payne advised us that he told the police that he was driving at the time of accident. This was while he was being transported to police headquarters. The fact that the police obtained this statement without Payne's attorney present was greatly upsetting to me. The police also testified to this admission."

In affidavit of Frierson Graves, Memphis attorney, he states that as a friend of the Payne family, he had a conversation with Mr. Marvin Ballin, partner of Mr. Al H. Thomas, counsel for plaintiffs, at or about the date of accident, at which time he inquired whether it would be permissible for Claude Payne, Jr., the father of Guy H. Payne, to call on the family to express his sympathy, and that on Sunday, March 30, 1975 Mr. Payne did, in fact, visit the Belsky family. We do not have the testimony of either Mr. Payne or any member of the Belsky family, and do not know what, if any, admissions may have been made on that occasion. Mr. Graves further stated in his affidavit: "There was no question in my mind that I was telling him (Mr. Ballin) that the driver of the vehicle was Guy H. Payne."

In affidavit of Marvin Ballin he stated that he recalled the various conversations and meetings with Mr. Graves, as related in the latter's affidavit, and that the same are substantially correct, except for the statement: "There was no question in my mind that I was telling him that the driver of the vehicle was Guy H. Payne." Mr. Ballin further stated: "At no time did Mr. Graves tell me that his client was, without question, the driver of the vehicle."

In affidavit of Wayne Austin, Branch Manager of Progressive Casualty Insurance Company, it is related that on April 4, 1975 he called on attorney, Al H. Thomas, to arrange to take a statement from the witnesses Gold. That thereafter, on November 5, 1975, December 15, 1975 and January 5, 1976 he sent letters to Mr. Thomas' office to furnish medical reports and list of expenses for the purpose of evaluating the case, and some information was furnished by Mr. Thomas' associate, Mr. James E. Bailey, Jr., on February 22, 1976.

In affidavit of Braxton Gandy, attorney for defendants, he relates that he called on Mr. Thomas on June 20, 1975, advising him of his firm's representation of the Progressive Casualty Insurance Company, and of his desire to receive medical documents and other information necessary to evaluate the claims; that Mr. Thomas did not have the documents at the time, but promised to furnish the same when received.

Mr. Al H. Thomas filed an opposing affidavit, in which he states: "That a motion for summary judgment has been filed in this case to which a number of affidavits have been attached, all of which contain blatant misstatements of the facts, and/or are at best self-serving declarations."

It is Mr. Thomas' position, as stated in his opposing affidavit, and in his brief, that it was not until defendant plead guilty to leaving the scene of accident and to involuntary manslaughter on November 24, 1975 that plaintiffs knew with certainty the identity of defendant.

From this review of the testimony, as contained in the transcript of testimony in the City Court, and the several supporting affidavits, it is at once apparent that there are many conflicting statements, and it can hardly be contended that there is no genuine issue of fact bearing on the material question of when plaintiffs or plaintiffs' counsel knew, or by the exercise of reasonable diligence should have known, the identity of defendants.

With respect to motions for summary judgment, Section 56.03 of the Rules of Civil Procedure provides:

"56–.03 MOTION AND PROCEEDINGS THEREON—The motion shall be

served at least (30) days before the time fixed for the hearing. The adverse party prior to the date of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, *show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.* A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." (Emphasis added)

In *Evco Corporation v. Ross*, Tenn., 528 S.W.2d 20, 24–25, in an opinion by Justice Harbison, the Court held:

"The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding material facts. *Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.*" (Emphasis added)

Again, in *Thomas v. Transport Insurance Company*, 532 S.W.2d 263, 266, our Supreme Court, while recognizing that a trial judge may grant a motion for summary judgment, in certain cases, nevertheless quotes with approval Section 6, Moore's Federal Practice, Sec. 56, to the following effect:

"Care should, of course, be taken by the district court to determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law."

In the recent case of *Phillips v. Pittsburgh Consolidated Coal Company*, Tenn., 541 S.W.2d 411, the Court held:

"A summary judgment can be granted only when the pleadings, stipulations, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

In *Teeters v. Curry*, Tenn., 518 S.W.2d 512, there was involved the question of application of the statute of limitations in a medical malpractice case. The trial court granted motion for summary judgment in favor of defendant, predicated upon brief and supporting affidavit of defendant.

The Court, in reversing and remanding the cause, cites, in part, Section 56.03 Tennessee Rules of Civil Procedure, as follows:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Further:

"At no place in the brief, or in the motion is it suggested there was no genuine issue of fact.

"The order of the Court simply recites:
'The Court being of the opinion that said motion is well taken, the Court does hereby enter judgments in favor of the defendant.'

"It is readily apparent that the Court, in effect simply sustained a plea of the statute of limitations and that this is the decisive issue before this Court."

It would appear, therefore, that the Supreme Court held, inferentially at least, that a motion for summary judgment should properly recite that there is no genuine issue of fact.

The motion for summary judgment in the case at bar does not recite there is no genuine issue as to any material fact, which the Supreme Court seems to hold is essential to consideration of such a motion.

From our rather detailed review of the facts and the evidence in support of the motion for summary judgment, we are of opinion, and so find, that there is a genuine issue of fact in the case at bar as to when plaintiffs or their counsel knew, or in the exercise of reasonable diligence should have known of the identity of defendants, and that the trial court was in error in sustaining the motion for summary judgment.

The judgment of the learned trial court is accordingly reversed, and the cause remanded for trial on all material issues.

Costs adjudged against appellees.