Moss YATER, Plaintiff/Appellant,

v.

WACHOVIA BANK OF GEORGIA, N.A., (f.k.a. The First National Bank of Atlanta), Defendant/Appellee.

Court of Appeals of Tennessee, Western Section, at Knoxville.

May 14, 1993.

Application for Permission to Appeal Denied by Supreme Court Aug. 2, 1993.

Alan Everett, Knoxville, for plaintiff/appellant.

H. Bruce Guyton, Baker, Worthington, Crossley, Stansberry & Woolf, Knoxville, for defendant/appellee.

TOMLIN, Presiding Judge (Western Section).

Moss Yater ("plaintiff") filed this action in the Knox County Circuit Court against the First National Bank of Atlanta ("defendant"

or "Bank") and others[1]. Plaintiff's complaint contended that due to Bank's negligent handling of his VISA credit card account he had sustained damages to his health, emotional well-being and business reputation. The trial court granted defendant's motion for summary judgment, holding that plaintiff's claims against Bank were barred by the one year statute of limitations. On appeal, we perceive that two issues have been raised by plaintiff, which are as follows: whether the trial court erred in (1) holding that plaintiff's claims were time-barred by the applicable statute of limitations and (2) in failing to allow plaintiff to take a post-judgment deposition pursuant to Rule 27.02, T.R.C.P. Defendant presents a singular issue of whether information which is established as truthful and transmitted to a credit reporting agency will support a claim for libel and slander. As our disposition of plaintiff's issues resolves this litigation, we pretermit this issue.

In 1983, defendant solicited plaintiff's business, offering him a VISA credit card with a pre-approved line of credit. Plaintiff accepted this offer, received the card and used it for several years. On March 3, 1985, a charge of $506.45 appeared on plaintiff's credit card bill. Plaintiff immediately informed Bank that the charge was erroneous and he was disputing it. In response, Bank sent plaintiff a form entitled "Cardholder Statement of Disputed Items" which plaintiff filled out and returned to Bank. Plaintiff continued to receive monthly billings on his VISA account, all of which included the disputed amount. Each succeeding month plaintiff contended that he paid in full what was due, with the exception of this disputed item. On all checks sent to defendant, he would mark them "paid in full—all other charges disputed." Plaintiff also requested of Bank the original documentation on which the disputed charge was based.

Plaintiff received no response and continued to receive statements which included the disputed amount in the balance due. Plaintiff wrote several letters to Bank in an attempt to settle this matter, but received no response. At about the same time, Bank began making telephone calls to plaintiff seeking to collect this account. Plaintiff states that on each occasion he was contacted by Bank he would explain that the billing was erroneous and that the charge was not authorized. Bank eventually turned over the account to a collection agency.

Unknown to plaintiff, defendant issued a pick-up order on his card in a nationally distributed VISA Warning Bulletin. Some time after the issuance of this bulletin, plaintiff's card was picked up at a business establishment when he presented it at a check out counter. Plaintiff contends that the clerk accused him of not paying his bill, and that this incident caused him humiliation and embarrassment.

Lastly, plaintiff contends that "during this time some party unknown to the Plaintiff, but on information and belief was the Defendant bank, and or one of their agents, falsely reported to Chilton, the national credit reporting service, with which the Knoxville Credit Bureau is affiliated, that Mr. Yater's account had been charged off to P & L as a bad debt ...". Plaintiff contends that as a result of this action some of his creditors revoked credit he had with them and that he was denied credit by others.

Plaintiff's complaint was filed on December 28, 1988. In its answer, Bank stated it did not have sufficient knowledge or information to form a belief as to the truth or falsity of most of the factual allegations. Bank denied it had breached any reasonable standards of conduct or any duty to plaintiff, and also denied it was guilty of any wrongful acts or omissions that could have caused plaintiff's damages. It also denied any statutory violations alleged by plaintiff.

In addition, defendant set up the defense of the one year statute of limitations, laches, excessive delay and estoppel. Defendant subsequently filed a motion for summary judgment, alleging that all of plaintiff's claims were barred by the one year statute of limitations applicable to tort actions. The

---

1. Plaintiff named six other parties as defendants. However, voluntary non-suits were taken as to them prior to this appeal.

trial court granted this motion, finding that plaintiff's cause of action was time-barred.

■■■ As this case comes to us on a motion for summary judgment, we take the facts as presented by the pleadings and the respective affidavits to the extent that they comply with the Tennessee Rules of Civil Procedure. This Court, like the trial court, in passing on a motion for summary judgment, must consider the facts as stated in the pleadings and evidentiary materials in a light most favorable to the opponent of the motion and draw all reasonable inferences therefrom in favor of the opponent. *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn.1991). The burden is on the moving party to show the absence of a genuine issue as to any material fact and that movant is entitled to judgment as a matter of law. *Jones v. Home Indemnity Insurance*, 651 S.W.2d 213, 214 (Tenn.1983).

## I. THE STATUTE OF LIMITATIONS IS-SUE

■■■ Plaintiff contends his dispute with Bank is governed by the six year statute of limitations pertaining to contracts, as set forth in T.C.A. § 28–3–109. This contention is without merit. It is well settled in this state that the gravamen of an action, rather than its designation as one in tort or contract, determines the applicable statute of limitations. There is no question that from the amended complaint and the record that the gravamen of the action in this case was mental anguish, anxiety, humiliation, embarrassment and damage to reputation. *Pera v. Kroger Co.*, 674 S.W.2d 715, 719 (Tenn.1984).

Bank contends that the claims as presented were purely ones for personal injuries, and that the one year statute of limitations for personal injury applies, thus the claims would be time-barred.

In his supplemental affidavit filed in opposition to defendant's motion for summary judgment based upon the one year statute of limitations, plaintiff states:

I became aware that there was a problem with my credit rating caused by the defendant bank was in a letter to me dated and postmarked March 16, 1987 and received by me a few days later. On or about this date a credit card that was up for renewal upon expiration was denied renewal due to the defendant bank's report mentioned above.

■■ It is clear from the above-quoted language that on or about March 16, 1987, plaintiff knew or certainly was put on inquiry that he had a claim against defendant relative to its handling of his credit card dispute. Plaintiff contends, however, that the statute of limitations should be tolled because of the conduct of Bank in dealing with him after he advised Bank that this charge item on his bill was erroneous. In support of this proposition he cites *Jackson v. Kemp*, 211 Tenn. 438, 365 S.W.2d 437 (1963). In *Jackson*, the plaintiff and defendant expressly entered into a contract that had the effect of tolling the statute. In the case before us, there were ongoing negotiations between plaintiff and Bank. There is nothing in this record to indicate any act by Bank to induce plaintiff to forego any legal action until after the running of the statute of limitations.

■■ Lastly, plaintiff asserts that a report of the Knoxville Credit Bureau "apparently indicates" that the Knoxville Bureau checked with defendant and re-confirmed the write-off of plaintiff's account. Counsel relies on the following paragraph taken from plaintiff's supplemental affidavit filed October 31, 1989:

That on August 8, 1989 and on October 27, 1989, I checked the records of The Credit Bureau of Knoxville, Inc. and found that the statements circulated by the bank continue to circulate, and whenever anyone requests a copy of my credit report from the Knoxville Credit Bureau they will, in fact, even today, receive a copy listing the charges claimed by the Defendant, First National Bank of Atlanta. Further said Credit Bureau's records indicate they were last updated in July, 1989, and presumably at that time a check was made with the defendant Bank about the validity of the debt in question.

Plaintiff draws a conclusion from the above that the republishing of the alleged false information by defendant concerning the debt in question either (a) tolled the statute

of limitations or (b) constitutes a new act of libel, which in and of itself gives rise to a cause of action. Again, we believe plaintiff's reliance upon this portion of his affidavit is misplaced.

In our opinion, the above-quoted portion does not meet the criteria of Rule 56.05, T.R.C.P., and therefore does not serve to create a disputed issue of material fact sufficient to withstand defendant's motion for summary judgment.

It is apparent that this portion of plaintiff's supplemental affidavit was an attempt to counteract the affidavit of J. Caldwell, an employee of defendant, filed a few months earlier in support of defendant's summary judgment motion. This affidavit reads in pertinent part as follows:

1. That she is an employee of The First National Bank of Atlanta, and that she has held such employment at all times relevant to the dispute between The First National Bank of Atlanta and Mr. Moss Yater.

2. That one of the duties of her employment is the maintenance of records on behalf of The First National Bank of Atlanta pertaining to the collection and status of past due accounts.

3. That the records in her possession indicate that Mr. Yater's VISA Credit Card Account, account # 4327–282–348–393 was written off as a bad debt on May 7, 1986.

4. That it is the practice of The First National Bank of Atlanta to report accounts which have been written off to the Chilton Credit Reporting Service, and that Mr. Yater's account would have been so reported during May of 1986.

Rule 56.05 reads in pertinent part as follows:

**Form of Affidavits—Further Testimony—Defense Required.**—Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

The impact of this rule has been construed in two recent cases. In *Fowler v. Happy Goodman Family,* 575 S.W.2d 496 (Tenn. 1978), Fowler was faced with a motion for summary judgment. In opposition thereto he filed an affidavit, which included as follows:

*Upon the information I have, I believe that all of the aforementioned representations of the plaintiffs were made by them knowing that they were false and they were intended to mislead me.*

*Id.* at 498.

In finding that the affidavit did not meet the requirements of Rule 56.05, the Supreme Court stated:

The sources of the "information" upon which petitioner based this "belief" are not revealed. Petitioner's own belief does not constitute "such facts as would be admissible in evidence" as required by Rule 56.05, *supra.* Nor does the affidavit show "affirmatively that the affiant is competent to testify to the matters stated therein," as required by the Rule.

*Id.*

In the later case of *Keystone Ins. Co. v. Griffith,* 659 S.W.2d 364 (Tenn.App.1983), in holding that the affidavit did not comply with Rule 56.05 and could not be considered as evidence, the Eastern Section of this Court, citing *Jameson v. Jameson,* 176 F.2d 58 (D.C.Cir.1949), stated:

[T]he [Jameson] court noted that Rule 56 'plainly requires (the word 'shall' being mandatory) that an affidavit state matters personally *known* to the affiant.' The Court went on to say that 'a statement in such affidavit as to what the affiant 'verily believes' does not satisfy this requirement. Belief, no matter how sincere, is not equivalent to knowledge.'

*Id.* at 366.

In this portion of his supplemental affidavit, plaintiff "presumes" that at the time the Knoxville Credit Bureau updated its records in July, 1989, it checked with Bank to ascertain the status of the debt. This "presumption" is the same as saying "I believe" or "based upon information" the alleged act took place. It fails to meet the strict requirements of Rule 56.05 so that his statements would be admissible in evidence. Plaintiff's affidavit could not be admissible as

presenting countervailing evidence against defendant's summary judgment motion.

As to plaintiff's claim of outrageous conduct, from the amended complaint it appears that the alleged actions took place between April, 1985 and May, 1986, when defendant "wrote off" the debt as uncollectible. More importantly, plaintiff has failed to come forward with any evidence (such as a sworn affidavit or deposition) to show that the alleged harassing calls occurred within one year prior to the date suit was filed. The trial court did not err in granting summary judgment as a matter of law upon the running of the statute of limitations.

## II. *POST-JUDGMENT DEPOSITIONS*

■ Following the granting of defendant's motion for summary judgment, plaintiff filed a motion pursuant to Rule 59.04 T.R.C.P. to alter or amend the judgment. In this motion plaintiff alleged, among other things, that defendant had made misrepresentations to the Court in its affidavit to the effect that it stated it had only advised the Knoxville Credit Bureau on one occasion concerning plaintiff's credit. In that regard, plaintiff states that "the representations ... *appear* to be false and misleading information." (Emphasis supplied.)

Shortly thereafter, plaintiff filed a motion to take a post-judgment deposition (of the Knoxville Credit Bureau) pursuant to Rule 27.02 T.R.C.P. The purported purpose for this deposition was to determine whether the "innocent misrepresentation" made to the Court in defendant's affidavit was false. While we find no order in the technical record reflecting that the motion was denied, apparently it was, as both parties state in their briefs that the motion was denied. Plaintiff contends that it was error on the part of the trial court to do so.

Rule 27.02 T.R.C.P. states as follows:

If an appeal has been taken from a judgment or before the taking of an appeal if the time therefor has not expired, the court in which the judgment was rendered may allow the taking of the depositions of witnesses *to perpetuate their testimony* for

use in the event of further proceedings in the trial court.

(Emphasis added.)

The Advisory Commission's Comments note that the law prior to the Rules of Civil Procedure limited the use of depositions to perpetuate testimony to cases involving either death, insanity or departure to a place unknown of the witness at the time the trial took place.

Tennessee Practice, Vol. 3, Rules of Civil Procedure Annotated, makes the following observation as to the purpose of this Rule:

The purpose of Rule 27 is to enable a prospective litigant or party to perpetuate testimony in limited circumstances at a time when the party is unable to commence appropriate litigation (or when a case is on appeal) and there is a likelihood that the opportunity to obtain the testimony will be lost before litigation is commenced (or further proceedings are resumed after the appeal is completed). There is no absolute right to take a deposition under Rule 27; the decision whether to authorize such a deposition is discretionary with the trial court.

We find the reasons given by plaintiff for the taking of this deposition in no way complies with the purposes and requirements found in either the Committee's comments or the excerpt from Tennessee Practice quoted above. The purpose stated by plaintiff did not comply with Rule 27. The trial court did not abuse its discretion in denying plaintiff the privilege of taking this deposition.

The judgment of the trial court is affirmed in all respects. Costs in this cause on appeal are taxed to plaintiff, for which execution may issue if necessary.

HIGHERS and FARMER, JJ., concur.